# United States District Court
# Central District of California

| | |
|---|---|
| THOMAS H. WAGNER, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHERN CALIFORNIA EDISON COMPANY et al., <br><br> Defendants. | Case No. 2:16-cv-06259-ODW (PLA) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [137]** |

## I.  INTRODUCTION

Plaintiff, Thomas H. Wagner, brings this action against Defendants, Southern California Edison Company and Edison International, for various claims related to Defendants' termination of Plaintiff's employment. Defendants move for partial summary judgment on Plaintiff's first claim for violation of whistleblower protection under the Sarbanes-Oxley Act (18 U.S.C. § 1514A). (Mot. for Partial Summ. J. ("MPSJ") 1–2, ECF No. 137.) For the following reasons, the Court **GRANTS** Defendants' Motion for Partial Summary Judgment.[1]

---

[1] After considering the papers filed in connection with this Motion, the Court deemed this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND[2]

Defendant Southern California Edison Company ("SCE") employed Plaintiff for seventeen years, the last ten years as a planner in SCE's Santa Barbara service center. (MPSJ 2; *see also* Pl.'s Statement of Additional Material Facts ("PSAMF") 1, ECF No. 142.)

On December 10, 2014, Plaintiff received a Letter of Reprimand from his supervisor, Alicia Pillado, for failing to follow another supervisor's instructions regarding work order corrections. (Defs.' Statement of Uncontroverted Facts ("DSUF") 6, ECF No. 137-1; Decl. of Reginald Roberts ("Roberts Decl.") ¶ 6, ECF No. 137-2.) The Letter of Reprimand warned Plaintiff "that any further misconduct of this nature; will result in further disciplinary action, up to and including termination." (Roberts Decl. Ex. 5.)

In early 2014, a major cable failure had occurred at the Modoc Substation that required repairs. (PSAMF 17.) Plaintiff worked on the creation and design of the repair at the Modoc Substation. (PSAMF 22, 23.) Plaintiff's design had to be approved by a supervisor, Michael Diaz. (PSAMF 22.) On January 27, 2015, Ms. Pillado sent Plaintiff an e-mail reminding him that he had not submitted the work order for Mr. Diaz's approval, and that Plaintiff needed to do so. (DSUF 8.) The same email informed Plaintiff that submitting the work order for approval was a "SOX" (Sarbanes-Oxley) requirement. (Roberts Decl. Ex. 6.) Plaintiff responded two days later that he would submit the work order in person for Mr. Diaz's review and approval. (*Id.*)

On April 29, 2015, Ms. Pillado met with Plaintiff as part of her review of deficiencies and noncompliance with SCE's accounting controls. (DSUF 9.) Ms.

---

[2] The Court does not rely on most of the evidence under objection and thus many objections are moot. *See Smith v. Cty. of Humbolt*, 240 F. Supp. 2d 1109, 1115–16 (N.D. Cal. 2003). To the extent that any other evidence is relied on in this Order without discussion of the objection, the relevant objections are overruled. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006) (concluding that "the court will proceed [only] with any necessary rulings on defendants' evidentiary objections").

Pillado informed Plaintiff that, among other things, his failure to obtain work order approvals, specifically the Modoc Substation work orders, could result in Sarbanes-Oxley violations. (DSUF 10; PSAMF 31.) The very next day, on April 30, 2015, Plaintiff filed an internal complaint to SCE's Ethics Helpline and an SCE attorney, alleging that Ms. Pillado had engaged in Sarbanes-Oxley violations. (DSUF 11.)

On May 1, 2015, Ms. Pillado placed Plaintiff on temporary disciplinary suspension for failure to follow work order processes despite directives to make corrections. (DSUF 12.) On May 2, 2015, Plaintiff filed a Whistleblower Retaliation Report with the California Public Utilities Commission stating that he believed Ms. Pillado engaged in Sarbanes-Oxley violations. (PSAMF 45.) On May 14, 2015, Plaintiff filed an online complaint against Ms. Pillado with the Occupational Safety and Health Administration ("OSHA"). (Decl. of Thomas H. Wagner ("Wagner Decl.") Ex. 16, ECF No. 144.) Ms. Pillado was unaware of Plaintiff's complaints against her until May 22, 2015. (Wagner Decl. Ex. 18, at 2.)

On May 18, 2015, Plaintiff received a job reinstatement letter regarding his reinstatement from a 10-day unpaid disciplinary suspension. (Roberts Decl. Ex. 7.) The letter informed Plaintiff that this was a "Last Chance" agreement as it related to his employment with SCE. (*Id.* at 1.) The letter warned Plaintiff that the "failure to adhere to these expectations will result in termination of your employment." (*Id.* at 2.) Plaintiff refused to sign the acknowledgement of receipt of the letter, but another employee acknowledged that Plaintiff was present and that SCE communicated to Plaintiff its expectations of him. (*Id.*)

Two weeks after Plaintiff's reinstatement, he submitted a timesheet for overtime hours purportedly worked during the period of May 29, 2015, to May 31, 2015. (Roberts Decl. Ex. 8 ("Timesheet Investigation Report").) Plaintiff's immediate supervisor, Mr. Diaz, suspected that Plaintiff was falsifying his timesheets because Plaintiff's vehicle report showed that he was at home during the time he was purportedly working. (*Id.*; Wagner Decl. Ex. 4.) On June 2, 2015, Mr. Diaz contacted

SCE's Ethics Office to report the potential time card fraud, and the Ethics Office initiated an investigation. (*See* Timesheet Investigation Report 1.)

On June 10, 2015, SCE's Manager of Employee Relations, Rebecca Nieto, emailed Plaintiff about information she received that Plaintiff had violated his last chance agreement. (Roberts Decl. Ex. 9; DSUF 16.) Specifically, Plaintiff made denigrating remarks about his supervisor, Mr. Diaz, to a customer and in a separate incident, made negative comments about a co-worker to a third party. (Roberts Decl. Ex. 9; DSUF 16.) As a result, on June 17, 2015, SCE placed Plaintiff on administrative leave pending the outcome of the timesheet investigation and the accusations by Ms. Nieto. (DSUF 17.) While on administrative leave, on June 30, 2015, Plaintiff filed a Sarbanes-Oxley Retaliation Report with the Securities and Exchange Commission ("SEC"). (PSAMF 47.)

On August 1, 2015, the Ethics Office completed its investigation and found that Plaintiff submitted timesheets for work he did not perform. (DSUF 18.) The Ethics Office also investigated Plaintiff's claim that Mr. Diaz harassed Plaintiff and found that there was no evidence to support Plaintiff's claim. (Timesheet Investigation Report 1.) On August 22, 2015, SCE's Regional Manager, Gary Shockley, notified Plaintiff via telephone that his employment was terminated. (DSUF 19.)

## III.  LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues

of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

**A. Sarbanes-Oxley Retaliation**

18 U.S.C. § 1514A(a)(1) "prohibits employers of publicly-traded companies from 'discriminat[ing] against an employee in the terms and conditions of employment' for 'provid[ing] information . . . regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." *Van Asdale v. Int'l Game Tech.*, 577 F. 3d 989, 996 (9th Cir. 2009) (alterations in original).

Claims under § 1514A(a)(1) are subject to a burden-shifting framework. *Id.* "[A] plaintiff is first required to make out a prima facie case of retaliatory discrimination; if the plaintiff meets this burden, the employer assumes the burden of demonstrating by clear and convincing evidence that it would have taken the same adverse employment action in the absence of the plaintiff's protected activity." *Id.*

To set forth a prima facie case for a Sarbanes-Oxley retaliation claim, a plaintiff must show: (1) "[t]he employee engaged in a protected activity or conduct"; (2) "[t]he named person knew or suspected, actually or constructively, that the employee engaged in the protected activity"; (3) "[t]he employee suffered an unfavorable personnel action"; and (4) "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action." *Id.* (quoting 29 C.F.R. § 1980.104(b)(1)(i)–(iv)).

Regarding the first element, to constitute protected activity, a plaintiff must have "(1) a subjective belief that the conduct being reported violated a listed law, and (2) this belief must be objectively reasonable." *Id.* at 1000.

Here, Plaintiff has failed to present evidence sufficient to show that (1) he had a subjective belief that Ms. Pillado was violating Sarbanes-Oxley; and (2) the belief was objectively reasonable.

### 1. Plaintiff did not have a subjective belief.

Plaintiff fails to provide sufficient evidence that he had a subjective belief that Ms. Pillado was engaged in a violation of Sarbanes-Oxley. Instead, Defendants have provided sufficient evidence establishing Plaintiff's lack of subjective belief. Specifically, in Plaintiff's deposition, Plaintiff admitted that he was not aware of any Sarbanes-Oxley type problem until Ms. Pillado called him into a meeting on April 29, 2015, and informed Plaintiff that his failure to obtain work order approvals for the Modoc Substation project could result in a Sarbanes-Oxley violation. (Decl. of David S. Secrest ("Secrest Decl.") Ex. 1 ("Wagner Dep."), at 265:3–15, ECF No. 143; DSUF 10.) Plaintiff filed a Sarbanes-Oxley complaint against Ms. Pillado only "because she was blaming [him] for a SOX violation." (Wagner Dep. 266:1–3.) In Plaintiff's complaint to the SEC, he wrote that he filed a Sarbanes-Oxley retaliation claim only after an adverse action was taken against him and that he "did not know that the accounting issues were in fact violations." (Wagner Decl. Ex. 17, at 1.) Thus, Plaintiff's actions and deposition testimony established that he filed his complaints not because he had any subjective belief that Ms. Pillado committed a Sarbanes-Oxley violation, but instead because she had informed him that his own failures may constitute a violation if not remedied. (*See* Wagner Dep. at 267:5–10.) Plaintiff made claims against Ms. Pillado only in retaliation for her accusations.

Moreover, Plaintiff's Opposition also fails to address how he had a subjective belief that Ms. Pillado committed a Sarbanes-Oxley violation. Plaintiff's Opposition on this issue is a one sentence, conclusory statement that "Plaintiff has presented ample evidence of his objectively reasonable belief of Ms. Pillado's attempt, or actual, violation of SCE internal accounting controls." (First Am. Opp'n to MPSJ ("Opp'n") 21, ECF No. 147-1.) This bare assertion is insufficient to overcome a motion for summary judgment. Contrary to Plaintiff's conclusory statement, Plaintiff has presented no evidence to support his prima facie case that he had a subjective belief that Ms. Pillado was engaged in a Sarbanes-Oxley violation.

## 2. Plaintiff's belief was not objectively reasonable.

Even if Plaintiff presented evidence sufficient to support a subjective belief that Ms. Pillado violated Sarbanes-Oxley, he fails to establish that such a belief was objectively reasonable. To satisfy the objectively reasonable standard, "the complaining employee's theory of [shareholder] fraud must at least approximate the basic elements of a claim of securities fraud." *Van Asdale*, 577 F. 3d at 1001. Specifically, the employee needed to believe that the actions "approximated the elements of securities fraud: material misrepresentation or omission, scienter, a connection with the purchase or sale of a security, reliance, economic loss, and loss causation." *Rocheleau v. Microsemi Corp., Inc.*, 680 F. App'x 533, 536 (9th Cir. 2017) (internal quotation marks omitted).

None of Plaintiff's allegations come close to the elements of securities fraud. As set forth above, Plaintiff made claims against Ms. Pillado only after he was accused that his actions, if unchecked, could result in Sarbanes-Oxley violations. What is more, the complaints Plaintiff made against Ms. Pillado fail to even approach the elements of securities fraud. Plaintiff must do more than simply throw out the phrase "Sarbanes-Oxley" to make a claim of a violation. Here, Plaintiff has not made claims or provided any evidence that Ms. Pillado's alleged conduct, converting an emergency project into a capital work order, involved any of the elements of securities fraud: no material misrepresentation or omission, no scienter, no connection with the purchase or sale of a security, no reliance, no economic loss, and no loss causation. Thus, Plaintiff has not provided any evidence that his belief was objectively reasonable.

Accordingly, Plaintiff has not set forth sufficient evidence to support a prima facie case that he engaged in protected activity or conduct. As Plaintiff cannot meet the first element of a claim for whistleblower protection under the Sarbanes-Oxley Act, partial summary judgment on this issue is proper.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Partial Summary Judgment. (ECF No. 137.)

**IT IS SO ORDERED.**

April 18, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**